**E-FILED**
Tuesday, 07 September, 2004  04:03:14 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| **RAMADA FRANCHISE SYSTEMS, INC.,** ) | | |
| a Delaware corporation, ) | | |
| ) | | |
| **Plaintiff,** ) | | |
| ) | | |
| v. ) | Case No. 03-2079 | |
| ) | | |
| **DAVID H. CLEMMONS,** ) | Mag. David C. Bernthal | |
| an individual, ) | | |
| ) | | |
| **Defendant.** ) | | |

**REPLY IN SUPPORT OF
<u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

Paula J. Morency
Robin M. Spencer
Fiona A. Burke
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, Illinois 60606
(312) 258-5500 phone
(312) 258-5700 fax

Counsel for Plaintiff

In its moving papers, RFS set forth the undisputed facts and legal principles that entitle RFS to judgment on its claims and an award of damages. Clemmons' response brief, comprised of argument and conclusory denials alone, underscores the appropriateness of summary judgment in RFS' favor. Clemmons concedes virtually all of the material facts that justify entry of judgment in Plaintiff's favor, and the record demonstrates that there are no genuine issues of material fact or legal basis for Clemmons' asserted arguments.

Significantly, Clemmons concedes, among other things, (1) his breaches of the License Agreement, which led to the termination of the License Agreement; (2) his failure to de-identify the Facility from its appearance as a Ramada hotel for at least nine months after the termination of the License Agreement; and (3) his obligation to pay contractual Recurring Fees and liquidated damages to RFS. (See Pl.'s Mem. at ¶¶ 34-45; Resp. at 1-5.) Because the contentions that he does make are not supported either by applicable law or by the facts, even when viewed in a light most favorable to him, RFS respectfully asks the Court to grant its motion for summary judgment.

I.  **Clemmons' Response Is Properly Stricken**

In his Response, Clemmons concedes the pertinent material facts in RFS' favor. Those challenges which he does make are mere argument and conclusory denials, in contravention of the requirements of Local Rule 7.1 and Federal Rule 56. Because Clemmons has not responded to RFS' statement of Undisputed Material Facts, nor met the other requirements of Local Rule 7.1(D)(2) and Federal Rule 56, (see Resp.), his Response is properly stricken and RFS' assertions properly are taken as true. (L.R. 7.1 ("Any filings not in compliance shall be stricken by the court."); Waldridge v. Amer. Hoechst Corp., 24 F.3d 918, 922-23 (7th Cir. 1994).

Even if his Response is not stricken, Clemmons cannot defeat summary judgment merely through a "swearing match." See In Re Wade, 969 F.2d 241, 245 (7th Cir. 1992). Rather, in

evaluating a motion for summary judgment, the only materials properly before this Court are defined by Rule 56(e) of the Federal Rules of Procedure. (F.R.C.P. 56(e) (opposing party "must set forth specific facts showing that there is a genuine issue for trial," as "would be admissible in evidence").) The requirements of Rule 56(e) "are set out in mandatory terms and the failure to comply with those requirements makes the proposed evidence inadmissible during the consideration of the summary judgment motion." Friedel v. City of Madison, 832 F.2d 965, 970 (7th Cir. 1987). "Rule 56(e) demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." Hadley v. County of DuPage, 715 F.2d 1238, 1243 (7th Cir. 1983).

Clemmons' affidavit includes sweeping denials of liability unsupported by specific facts, (see, e.g., Clemmons Aff., ¶¶ 14-18), which are exactly the type of conclusory allegations that Rule 56 counsels should be disregarded on summary judgment. Accordingly, Clemmons' noncompliant Response and affidavit should not be considered by the Court.

**II.    Summary Judgment Is Proper On Counts I-IV, VI and VII (Trademark Infringement)**

Even if Clemmons' noncompliant Response and affidavit are considered, summary judgment in RFS' favor is appropriate. Clemmons does not dispute that he is liable under Count I (Section 32 of the Lanham Act); Count II (Section 43(a) of the Lanham Act), Count IV (Unjust Enrichment), Count VI (Illinois Consumer Fraud and Deceptive Business Practices Act), and Count VII (Common Law Unfair Competition). (See Resp.) Instead, he argues against liability only under Count III (Section 43(c) of the Lanham Act), and either does not address, or does not

respond, regarding his liability on the remaining counts. (See Resp. at 2.)[1] Accordingly, summary judgment in RFS' favor on liability properly may be granted on Counts I, II, IV and VII.

With respect to Count III, Clemmons argues that there is a disputed issue of material fact as to the willfulness of his infringement, precluding summary judgment on that Count. (Id. at 3.) He also argues against the trebling of any Lanham Act damages, again on the basis of willfulness,[2] and he questions RFS' calculation of infringement damages. (Id. at 3-4.)

Clemmons' arguments fail for several reasons. First, Clemmons has not presented any facts creating a genuine issue for trial as to his willfulness, either with respect to Count III's Section 43(c) claim or with respect to trebling under Lanham Act Sections 32 and 43. A finding of willfulness and trebling of trademark infringement damages are appropriate where a defendant's conduct is knowing or deliberate. See, e.g., Sparks Tune-Up Centers, Inc. v. Strong, 1995 WL 153277 (N.D. Ill. April 6, 1995) (citing Gorenstein v. Quality Care-USA, Inc., 874 F.2d 431, 436 (7th Cir. 1989)) (defendant's conduct was deliberate where he was "put on notice of the wrongfulness of his conduct" and did not discontinue infringing conduct); see also Dunkin' Donuts v. Towns Family, Inc., 1996 WL 328018, *9-10 (N.D. Ill., June 11, 1996) (summary judgment granted; defendants' continued display of trademarks after receiving termination letter and notice of lawsuit was willful and deliberate). The Seventh Circuit has "emphasized that in the licensing context, enhancement of damages [through trebling] for

---

[1] Clemmons argues that it appears to him that RFS has not moved for summary judgment on Counts IV, VI and VII, (Resp. at 2), but RFS has so moved on these counts. (See Motion; Mem. at pp. 17-19.)

[2] Willfulness is not required for liability or an award of damages under Sections 32 and 43(a) of the Lanham Act. See, e.g., Dunkin' Donuts v. Towns Family, Inc., 1996 WL 328018, *4-5 (N.D. Ill., June 11, 1996). Instead, the issue of willfulness under those Sections concerns the trebling of RFS' damages. Id. at *8.

3

Lanham Act violation is especially appropriate because without an enhancement, the infringer would be required to pay only what he should have paid to the aggrieved licensor in the first place." Dunkin' Donuts, 1996 WL 328018 at *8, citing Sands, Taylor & Wood v. Quaker Oats Co., 34 F.3d 1340, 1351 (7th Cir. 1994).

Here, it is undisputed that Clemmons (1) was personally bound by the License Agreement, including the post-termination de-identification obligations in Section 23; (2) received notice in August 2002 of RFS' intent to termination the License Agreement; (3) received RFS' November 20, 2002 Notice of Termination; (4) received notice of RFS' March 10, 2003 demand that he cease and desist the misuse of the Ramada Marks at the Facility; and (5) did not remove the Ramada Marks until mid-August 2003, months after the May 9, 2003 filing of the Complaint and RFS' Motion for Preliminary Injunction.[3] (Resp.; Clemmons Aff. at ¶¶ 1, 10-15.) This constitutes knowing, deliberate and willful infringement under the trademark laws.

In an attempt to create an issue of fact with respect to willfulness, Clemmons contends that he had leased the hotel property to Quadrant Joint Venture ("Quadrant") and that, following receipt of RFS' Termination Notice in November 2002, he was "unable to enter the premises and remove the franchise marks of the Plaintiff" before July 2003. (Clemmons Aff., ¶ 14.) The law does not support his argument.

Willfulness under the Lanham Act is satisfied where a defendant's conduct was knowing and deliberate – *i.e.*, conduct that continued after knowledge of a termination notice revoking authorization to display the trademarks. (See *supra.*) Furthermore, "willful blindness" –

---

[3] RFS has presented evidence that the misuse of the Ramada Marks continued until at least August 11, 2003. (Mem. ¶ 51, p. 10.) Clemmons does not dispute this, asserting only that he "promptly" removed the Marks sometime after July 2003. (See Clemmons Aff., ¶¶ 14-15.)

4

suspecting wrongdoing but deliberately failing to investigate or act – is equivalent to actual knowledge under the Lanham Act. See, e.g., Sparks Tune-Up Centers, Inc., 1995 WL 153277 at *5, citing Hard Rock Café Licensing Corp. v. Concession Services, Inc., 955 F.2d 1143, 1150 (7th Cir. 1992). In the Seventh Circuit, a landlord may be held liable for the willful trademark infringement of his tenant. Id.

Clemmons' conduct, even viewed in a light most favorably to him, constitutes willfulness under the law. Clemmons does not dispute the validity of the License Agreement, or that he was personally responsible under the License Agreement to remove the Ramada Marks upon termination of the License Agreement. (See Resp.) Furthermore, he has admitted that the License Agreement was "personal to [Clemmons] [and Clemmons] shall not lease or sublease the Facility to any third party, and will not, directly or indirectly, by operation of law or pursuant to several related transactions assign, transfer, convey, or pledge, except . . . with [RFS'] prior written consent," and that attempted conveyances in violation of the License Agreement were void. (Mem. at ¶¶ 23-24, p.5; Resp.) Clemmons also has admitted that he did not obtain RFS' written consent, at any time, to his alleged lease agreement with Quandrant. (Id., ¶ 40, p.5; Resp. 1-5)[4]

Even if that were not so, however, the Lease Agreement that Clemmons himself has put into the record before the Court establishes that he (as the Landlord) plainly could have entered the premises to inspect and cause the removal of the Ramada Marks, including the large signs, at any time following the November 20, 2002 termination of the RFS License Agreement. (See Clemmons' Answer and Third Party Complaint (Doc. 10), Ex. A ("Lease Agreement") at § 4.03

---

[4] Clemmons argues that he informed RFS of his lease to Quandrant after he already had entered into it, but he does not assert that he ever sought or obtained RFS' written consent to do so (see Resp. & Exs.). The facts he has presented, even viewed most favorably to Clemmons, do not excuse him from personal responsibility under the License Agreement or the trademark laws.

5

("Landlord. . . shall at all reasonable times be permitted to inspect. . . Tenant's operation of the Leased Premises."); §§ 7.01, 7.06 & 10.01 (requiring Tenant's compliance with federal and state laws and the terms set out in Clemmons' License Agreement with RFS, providing for Landlord's inspection of signage, and permitting the Tenant to operate the premises only as a Ramada Inn and only in accordance with Clemmons' License Agreement with RFS); §§ 12.01 & 12.02 (providing Clemmons the right to enter the premises to "perform any covenant or obligation of Tenant," "Retake possession of the Leased Premises and Equipment without accepting a surrender of the Leased Premises or terminating the Lease. . .," or terminate the Lease, among other things, ten days after the Tenant's default).

Thus, even taking Defendants' facts as true, Clemmons plainly had the ability to enter the property that he owned and cause the removal of the Ramada Marks, as required by the federal and state trademark laws. Instead, despite admittedly having personal knowledge of the November 2002 Termination Notice, the March 2003 cease and desist demand, and this May 2003 lawsuit, Clemmons chose not to investigate, act or remove the Ramada Marks for months thereafter.[5] Accordingly, there is no genuine issue that Clemmons post-termination infringement was knowing and deliberate.

Clemmons next disputes, in cursory fashion, RFS' calculation of infringement damages (before trebling): he denies the calculation's "relevance" and characterizes it as "self-serving." (Resp. 3-4.) Clemmons' argument does not create a genuine issue of fact precluding summary judgment, however. RFS has calculated its infringement damages by using a reasonable royalty measure of damages, applying the royalty rate set forth in the License Agreement. In the

---

[5] Indeed, Clemmons plainly had a motive not to remove the Ramada Marks: according to his own pleading, he was a landlord entitled to any rents that were earned through use of the famous Ramada Marks. See, e.g., Lease Agreement at Section 4.02 (Rent).

Seventh Circuit, reasonable royalties are a proper and well-accepted measure of Lanham Act damages. See Zelinski v. Columbia 300, Inc., 335 F.3d 633, 641 (7th Cir. 2003); see also Ramada Inns, Inc. v. Gadsden Motel Co., 804 F.2d 1562, 1565 (11th Cir. 1986) (royalties are proper measure of damages for misuse of marks by hold-over franchisee).

RFS has provided competent evidence of a reasonable royalty rate – the very royalty rate agreed upon in the License Agreement. (Mem. at ¶¶ 62-65; Darby Aff. at ¶¶ 65-68.) See also Dunkin' Donuts, 1996 WL 328018 at *8 (infringement damages calculated by applying former franchise royalty rate were proper).[6] Clemmons has not provided any authority or evidence controverting RFS' measure of damages, and his conclusory denial of the "relevance" of RFS' damage calculation simply cannot create a genuine issue of material fact. Accordingly, RFS is entitled to $124,764.00 for Clemmons' unauthorized, willful post-termination use of the Ramada Marks (i.e., $41,588.00 calculated pursuant to the reasonable royalty measure of damages, trebled), plus attorneys' fees and costs. (Mem., ¶ 64.)[7]

### III. Summary Judgment Is Proper on Counts IX, X and XI (Contract Claims)

With respect to RFS' breach of contract claims, Counts IX, X and XI, Clemmons admits that he is liable to RFS for Recurring Fees (with interest) and liquidated damages as set forth in Section 22 of the License Agreement ("Liquidated Damages"), but he questions RFS' calculation

---

[6] Clemmons argues that RFS' request for an accounting of his profits in Count 8 precludes its damages, (Resp. at 2), but a reasonable royalty measure of damages is a proper alternative to an award of the defendants' profits.

[7] Clemmons also criticizes RFS for supposedly "fail[ing] to explain to the Court how it is entitled to damages under the Lanham Act and also contractual damages for liquidated damages." (Resp. at 3.) RFS is entitled to contractual liquidated damages pursuant to section 22 of the License Agreement as compensation for the premature termination of the License Agreement years before its term expired; Clemmons does not dispute that he owes liquidated damages (Resp. at 4-5). In addition, RFS is entitled to statutory infringement damages under the Lanham Act by decree of Congress, for the unauthorized use of its Marks following the termination of the Agreement. The damages are not duplicative. See Ramada Inns, Inc. v. Gadsden Motel Co., 804 F.2d at 1566-67.

of interest due on Recurring Fees and argues that RFS is not contractually entitled to interest on Liquidated Damages (Resp. at 4-5).

Clemmons' challenges to RFS' interest charges are unavailing. Section 6(c) of the License Agreement provides:

> Interest shall accrue at the rate of the lesser of 1.5% per month or the maximum rate permitted by applicable law from the due date of <u>any payment due pursuant to this Agreement</u> which remains unpaid beyond any applicable grace period and shall be payable immediately upon Licensee's receipt of [RFS'] invoice.

(Mem., Ex. 3, § 6(c) (emphasis added).) Accordingly, RFS is entitled to interest on any payments due pursuant to the License Agreement – whether interest is charged on Recurring Fees or on Liquidated Damages.

Although Clemmons does not dispute the propriety of interest on Recurring Fees, and offers no contrary evidence to refute RFS' calculation of Recurring Fees and interest, he asserts that he cannot understand RFS' calculation of interest and speculates that it might be compound interest. (Resp. at 4.) However, the evidentiary support that RFS has submitted to the Court reflects simple interest calculated at a rate of 1.5% monthly on Recurring Fee charges that are more than thirty days past due (and not on finance charges or accruals). (Darby Aff., ¶¶ 52-55 & Ex. D.) Because Clemmons' misunderstanding of this interest calculation does not create a genuine issue of fact, RFS is entitled to past-due Recurring Fees and interest as set forth in its opening papers.

Similarly, RFS is entitled to interest on Liquidated Damages. Clemmons does not dispute RFS' entitlement to Liquidated Damages in the amount of $50,000, but argues that RFS is not entitled to interest on this amount for two purported reasons. First, Clemmons suggests that Section 6(c) of the License Agreement, which requires the payment of interest, may not apply to Liquidated Damages amounts. Section 6(c), however, plainly provides that Clemmons

8

is required to pay interest on "any payment due pursuant to this [License] Agreement," (Mem., Ex. 3, § 6(c)), defeating Clemmons' argument.

Clemmons' second argument, that RFS "failed to provide evidence" that it invoiced Clemmons for liquidated damages, fails as well. (Resp. at 5.) RFS provided specific factual evidence in its opening papers reflecting its written demand to Clemmons for immediate payment of liquidated damages, made in its November 20, 2002 Termination Notice. (Mem., ¶ 40 & Ex. 9.) Clemmons has admitted receiving this Notice, and further has admitted that the Notice "advised him that he was required to pay liquidated damages pursuant to the terms of the License Agreement." (see Mem., ¶ 40; Answ., ¶ 33). In the face of these admissions, Clemmons may not be heard to complain that he was not invoiced for the $50,000 liquidated damages amount set forth in the Section 22 of the License Agreement.

Accordingly, no genuine issue of fact exists precluding RFS from an award of Recurring Fees, Liquidated Damages and interest in the amounts sought in its motion for summary judgment.

## CONCLUSION

For the reasons set forth in this and its Opening Memorandum and supporting materials, RFS is entitled to summary judgment on Counts I-IV, VI-VII and IX-XI. Accordingly, RFS respectfully requests this Court to enter judgment against the Defendant for $275,362.03, as well as attorneys' fees and costs and pre-judgment interest, and any other relief the Court deems just.

September 7, 2004                               Respectfully submitted,

                                                               RAMADA FRANCHISE SYSTEMS, INC.

                                                               By:   s/Robin M. Spencer
                                                                      Counsel for Plaintiff

Paula J. Morency
Robin M. Spencer
Fiona A. Burke
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, Illinois 60606
(312) 258-5500 phone
(312) 258-5700 fax
pjmorency@schiffhardin.com
rspencer@schiffhardin.com
fburke@schiffhardin.com

## CERTIFICATE OF SERVICE

  I, Robin M. Spencer, an attorney, hereby certify that I caused to be served a copy of the foregoing Reply in Support of Plaintiff's Motion for Summary Judgment upon the following on September 7, 2004:

**Via U.S. Mail**

Ronald E. Osman, Esq.
Ronald E. Osman & Associates Ltd.
1602 W. Kimmel St.
P.O. Box 939
Marion, Illinois 62959-1003
(618) 997-5151
(618) 997-4983


              s/Robin Spencer
              Robin M. Spencer