IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| RAMADA FRANCHISE SYSTEMS, INC., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Case No. 03-2079 |
| DAVID H. CLEMMONS, an individual, | ) ) ) ) | Mag. David C. Bernthal |
| Defendant. | ) | |

### AFFIDAVIT OF ALBERTINA CUNHA

ALBERTINA CUNHA, being duly sworn, according to law, upon her oath, deposes and says:

1. I am the current Director of Franchise Administration for Ramada Franchise Systems, Inc. ("RFS"). I make this affidavit based on my personal knowledge, the records of RFS and information available through employees of RFS, in support of RFS' Supplemental Memorandum in Support of its Motion for Summary Judgment, as requested by the Court in its October 14, 2004 Order, and am duly authorized so to represent. I am prepared to testify competently to them if called as a witness in this matter.

2. I am familiar with the terms of the franchise agreements that govern RFS' franchise relationships with its franchisees, including RFS' license agreement with Clemmons which was terminated on November 26, 2002 due to Clemmons' breaches of contract.

3. In its Motion for Summary Judgment, RFS seeks, among other things, $41,588.00 as its damages for Clemmons' unauthorized, willful post-termination use of the Ramada Marks at his Danville, Illinois hotel ("Facility"), trebled to total $124,764.00.

4. These infringement damages were calculated by multiplying the Facility's average monthly reported gross room revenues for the 24 months preceding termination

[$61,158.91] by the royalty percentage rate that Clemmons was obligated to pay to RFS under Section 6 and Schedule C of the License Agreement [8.5%], multiplied by the number of months of post-termination infringement [8 months], and then trebling that number pursuant to the Lanham Act. Said another way, the calculation is $61,158.91 [average monthly gross room revenues] x 8.5% [contractual royalty rate] = $5,198.50 [average monthly royalties ("Recurring Fees")] x 8 [months of infringement] = $41,588.00, trebled to $ 124,764.00.

5. The Facility's average monthly gross room revenue component of this calculation was determined by using the gross room revenues that the Facility reported to RFS from September 2000 through August 2002, the two-year period prior to the termination of the License Agreement.[1] The Facility reported $1,467,814 in total gross room revenues between September 2000 and August 2002. Thus, the Facility's average monthly reported gross room revenue prior to termination was $61,158.91 [$1,467,814 divided by 24 months]. A true and correct copy of a schedule created and maintained in the ordinary course of RFS' business, reflecting the Facility's reported gross room revenues for the 24 months preceding termination is attached hereto as Exhibit A. In addition, a true and correct copy of a schedule, created and maintained in the ordinary course of RFS' business, reflecting the 8.5% contractual Recurring Fees percentage due pursuant to Section 6 and Schedule C of the License Agreement is attached hereto as Exhibit B.

---

[1] The Facility did not report its gross room revenue for September, October or November of 2002 in violation of the License Agreement.

2

Further affiant sayeth not.

DATED: October 25, 2004

*Albertina Cunha*
Albertina Cunha

SUBSCRIBED and SWORN to before me this 25th day of October, 2004 in Parsippany, New Jersey.

*Seiflin J. Williams*

My commission expires: 4/13/09