E-FILED
Wednesday, 08 December, 2004 04:17:25 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **RAMADA FRANCHISE SYSTEMS, INC.,** a Delaware corporation, ) ) | |
| Plaintiff, ) | |
| v. ) | Case No. 03-2079 |
| ) | |
| **DAVID H. CLEMMONS**, an individual, ) | |
| ) | |
| Defendant. ) | |

## ORDER

In May 2003, Plaintiff, Ramada Franchise Systems, Inc. (hereinafter "RFS" or "Ramada"), filed a Verified Complaint (#1) against Defendant David H. Clemmons. The Court has jurisdiction over this case based on diversity and also based on federal question because some of Plaintiff's claims are based on the Lanham Trademark Act of 1946 (hereinafter "Lanham Act") (15 U.S.C. §§ 1114(1)(a), 1125(a), 1125(c)).

In June 2003, Defendant filed an Answer and Third Party Complaint (#10) against Third-Party Defendant Quadrant Joint Venture (hereinafter "Quadrant"). In November 2003, the Court entered an Order (#25) granting Clemmons' motion for default judgment as to Third-Party Defendant Quadrant. In December 2003, the Court allowed Plaintiff's Motion for Leave To File Amended Verified Complaint (#28), which changed only the amount of liquidated damages.

In June 2004, Plaintiff filed a Motion for Summary Judgment (#29). After reviewing the parties' pleadings, memoranda, and other materials, the Court **GRANTS** Plaintiff's Motion for Summary Judgment **(#29)** in part and **DENIES** it in part.

**I. Background**

Plaintiff's claims arise from Defendant's unauthorized use of the Ramada trade names and service marks, logos, and related materials (collectively referred to hereinafter as "Marks") following the termination of the License Agreement between Plaintiff Ramada and Defendant Clemmons.

The undisputed facts are as follows: In June 1992, Plaintiff Ramada entered into a License Agreement (hereinafter "Agreement") with Defendant Clemmons and the late George Barnes regarding the operation of a 131-room lodging facility located in Danville, Illinois. Section 3 of the Agreement provides that Clemmons may use the Ramada Marks in association with the operation and use of the facility. Section 4 of the Agreement provides that Clemmons will operate the facility for a fifteen-year term. Section 6 of the Agreement provides that Clemmons will pay royalties, assessments, taxes, interest, and other fees, collectively called "Recurring Fees." Sections 7, 10, and 17 and Schedule B of the Agreement provide that Clemmons will renovate the facility to bring it into compliance with certain standards, as defined in the Agreement, and then will maintain it in compliance with those standards. Section 14 provides that Clemmons must obtain insurance for the facility.

Section 20(a) of the Agreement provides that the Agreement is personal to Clemmons and that he may not assign or transfer to any third party any rights under the Agreement without Ramada's prior written consent. Section 20(f) of the Agreement provides that any attempted transfer lease, sublease, assignment, or pledge that is not in accordance with Section 20 shall be void and shall give Ramada the right to terminate the License and exercise other rights and remedies under the Agreement. Section 21(b) of the Agreement provides that Ramada can terminate the Agreement for reasons including Clemmons' failure to submit monthly reports, failure to pay any amount due under the Agreement, or failure to remedy any other default of his

obligations under the Agreement within thirty days after receiving notice specifying a default. Section 22 provides that, in the event the Agreement is terminated pursuant to Section 21(b), Clemmons is obligated to pay liquidated damages to Ramada in accordance with a formula specified in the Agreement but not to exceed $50,000, and payment of liquidated damages would be in addition to Ramada's other rights under the Agreement. Section 23 provides that Clemmons is obligated to immediately stop using the Ramada Marks if the Agreement is terminated. Section 30 provides that New York law will apply to the construction of the contract.

Defendant Clemmons breached the Agreement by failing to operate the facility in accordance with Ramada's standards. Between June 1999 and October 2000, Ramada conducted four quality assurance inspections, and the facility received failing scores at all four inspections. In July 2000, Ramada informed Clemmons that (a) he was in breach of the Agreement because he owed Ramada approximately $20,149.51 in outstanding Recurring Fees; (b) he had ten days to cure the monetary default; and (c) if he failed to cure the default, the Agreement would be subject to termination. In August 2001, Ramada sent Clemmons a letter informing him that the facility had received a failing score at an inspection, and therefore, Clemmons was in default of his obligations under the Agreement. Ramada sent similar letters in February 2002 and August 2002.

Clemmons failed to cure the defaults, and in November 2002, Ramada sent Clemmons a letter terminating the Agreement effective November 26, 2002. This termination notice also advised Clemmons that (1) he was required to pay Ramada all past due Recurring Fees and other charges due under the Agreement, including "the amount of liquidated damages specified in the Agreement" (#30, Ex. 9); and (2) he had fourteen days to perform his post-termination obligations, including removal of all items from the facility that referred to Ramada. Clemmons

continued to use the Ramada Marks at the facility. In March 2003, Ramada again demanded that Clemmons stop using the Ramada Marks and informed him that the unauthorized use of the Marks constituted trademark infringement. During facility inspections conducted in January, May, and June 2003, the Ramada Marks were still being displayed at the facility.

In support of his opposition to the motion for summary judgment, Defendant Clemmons filed an affidavit, a letter to Curt Horner regarding the Ramada Improvement Plan, and a document titled "Contact Information for Site # 891," dated March 21, 2002. In his affidavit, Clemmons testified that, in January 2002, he entered into a lease agreement (hereinafter "QJV lease") with Quadrant. Among other things, the QJV lease (Answer and Third Party Complaint, #10, Exhibit A) stated that Defendant had access to the leased premises for purposes of inspecting Quadrant's business records (QJV lease, § 4.03), required Quadrant to comply with the terms set out in Clemmons' Agreement with Ramada and with all laws (QJV lease, §§ 7.04, 7.06), required Quadrant to comply with the Agreement with regard to all signage (QJV lease, § 10.01), and, in the event of Quadrant's default of any term of the QJV lease, authorized Clemmons to perform any "any covenant or obligation of Tenant" (QJV lease, §§ 12.01, 12.02).

Ramada was aware of the QJV lease as a result of Clemmons' phone conversations with Ramada agents Craig Froman and Robert Kolatac. In February 2002, Defendant informed Curt Horner, Ramada's Director of Quality Assurance, of improvements to the property and the fact that Quadrant partners Walter Lamkin and Mien Aldrich were the new contact persons for the property. Mr. Horner knew that Stu Sapp, a Ramada employee, had met the new lessee and was giving advice on how to improve the property. After Defendant received Plaintiff's August 2002 letter regarding its intention to terminate the Agreement, he contacted Quadrant partners Lamkin and Aldrich and informed them that they needed to comply with the terms of the Agreement and remove all of Ramada's Marks. Defendant testified that Lamkin and Aldrich

4

assured Defendant that they were complying with Plaintiff's requests and that he was unable to enter the premises and remove Ramada's Marks until July 2003, when the lease between Quadrant and Clemmons was terminated. He also stated that, when the property came into Defendant's possession (in July 2003), he removed all of Ramada's trademarks.

Plaintiff's complaint alleges eleven counts, as follows: (1) Counts I, II, and III allege violations of Sections 32, 43(a), and 43(c), respectively, of the Lanham Act (15 U.S.C. § 1114(1)(a), 1125(a), 1125(c)); (2) Count IV alleges unjust enrichment; (3) Count V alleges violations of the Illinois Deceptive Trade Practices Act (815 ILCS 510/1 *et seq.*); (4) Count VI alleges violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.*); (5) Count VII alleges common law unfair competition; (6) Count VIII seeks an accounting; and (7) Counts IX, X, and XI allege breach of contract. Count IX seeks liquidated damages resulting from the termination of the Agreement approximately five years before its contractual ending date of June 22, 2007. Alternatively, Count X seeks actual damages in the event that the Court determines Plaintiff is not liable for liquidated damages. Count XI seeks the recurring fees that Defendant owes Plaintiff under the Agreement.

As damages, Plaintiff seeks $124,764 plus interest, attorney fees, and costs for the claims in Counts I-IV and VI-VII. Plaintiff also seeks liquidated damages of $50,000 plus $14,250 interest for the claim in Count IX and $86,348.03 in recurring fees and accrued interest for the claim in Count XI. As an alternative to the damage amounts for Counts IX and XI, Plaintiff seeks actual damages resulting from premature termination of the License Agreement. Plaintiff requests a total of $275,362.03 in damages.

In June 2004, Plaintiff filed a Motion for Summary Judgment (#29). In October 2004, at the Court's request, Defendant filed a Supplemental Memorandum in Support of Its Motion for

Summary Judgment (#40).

## II. Standard of Review

Summary judgment is appropriate if the pleadings, answers to interrogatories, admissions, affidavits, and other evidence show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(b). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party seeking summary judgment carries the initial burden of showing that no such issue of material fact exists.

Pursuant to Rule 56(b), when a properly supported motion for summary judgment is made, the nonmoving party must set forth evidence showing that a genuine issue exists as to any material fact and that the moving party is not entitled to judgment as a matter of law. FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 247-48. The nonmoving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, it must go beyond the pleadings and support its contentions with proper documentary evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321-22 (1986). The Court must draw all inferences in the light most favorable to the nonmoving party. *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir. 1987). It is not required to draw every conceivable inference, only those that are reasonable. *Id.*

### III. Analysis

Plaintiff argues that there are no disputed material facts, and the Court should grant summary judgment in its favor on Counts I-IV, VI, VII, and IX-XI. In addition, the Court notes that Defendant has failed to comply with the Local Rules for the Central District of Illinois.

In his response, Defendant raises the following arguments: (1) a genuine issue of material fact exists as to whether he willfully violated the Lanham Act by displaying Plaintiff's Marks; (2) Defendant denies that he owes Plaintiff for damages under the Lanham Act and rejects the formula used by James Darby to calculate the damage amount of $41,588; (3) Plaintiff has failed to show that it is entitled to damages under the Lanham Act in addition to liquidated damages for the breach of contract claims; (4) Defendant objects to Plaintiff's compounding the interest owed on a monthly basis when determining the amount of outstanding recurring fees and interest; (5) Defendant disputes Plaintiff's statement that the Agreement provides for interest on liquidated damages; and (6) Defendant states that Plaintiff has provided no evidence that it sent Defendant an invoice for $50,000 in liquidated damages which would trigger the interest charge.

### A. Compliance with Local Rules

As an initial matter, Defendant's Response to Plaintiff's Motion for Summary Judgment (#33) fails to comply with Local Rules for the Central District of Illinois in several ways, including the following: (1) It fails to properly respond to Plaintiff's material facts claimed to be undisputed (CDIL-LR 7.1(2)(b)(1-4)); and (2) it fails to support alleged disputes with reference to evidence (CDIL-LR 7.1(2)(b)(2)).

As the Local Rules state, the consequences for failing to comply are discussed thoroughly in *Waldridge v. American Hoechst Corporation*, 24 F.3d 918 (7th Cir. 1994). When the nonmoving party does not respond to the moving party's statement of facts, the nonmoving party concedes the moving party's version of the facts. *Waldridge*, 24 F.3d at 922; *Columbia Pictures Indus., Inc. v. Landa*, 974 F. Supp. 1, 3 (C.D. Ill. 1997). Thus, Defendant has conceded Plaintiff's proposed undisputed facts.

In addition to failing to follow local rules, the Court notes that Defendant has responded to Plaintiff's motion for summary judgment by simply denying that he violated the Lanham Act. This statement is the type of conclusory allegation that courts should disregard on summary judgment. "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Hadley v. County of Du Page*, 715 F.2d 1238, 1243 (7th Cir. 1983). The Court will not rely upon statements that are conclusory, but will, where applicable, rely upon the more reliable evidence in the record. *See Market v. Illinois Bell Tele. Co.*, No. 01 C 3841, 2003 WL 22697284, at *6 (N.D. Ill. Nov. 13, 2003).

Nevertheless, Defendant's failure to dispute Plaintiff's version of the facts does not automatically result in summary judgment for Plaintiff. *See LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 392 (7th Cir. 1995) (a party's failure to submit a response to a motion for summary judgment does not automatically result in summary judgment for the moving party). It remains the moving party's burden to demonstrate that no genuine issue of material fact exists and that he is entitled to summary judgment as a matter of law. *Doe v. Cunningham*, 30 F.3d 879, 883 (7th Cir. 1994). Accordingly, the Court must determine whether the undisputed facts in this case show that summary judgment is proper as a matter of law. *LaSalle Bank*, 54 F.3d at 392.

### B. Plaintiff's Trademark Infringement Claims (Counts I-IV, VI, VII)

Counts I, II, and III allege violations of Sections 32, 43(a), and 43(c) of the Lanham Act, respectively (15 U.S.C. § 1114(1)(a), 1125(a), 1125(c)). In Count IV, Plaintiff alleges that Defendant was unjustly enriched by his continued use of the Ramada Marks. Count VI alleges that Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.*) by his continued deceptive use of the Ramada Marks. Count VII alleges common law unfair competition based on Defendant's conduct that passed off the lodging facility services as having received Ramada's sponsorship or approval and also alleges that such conduct diluted the value of Ramada's Marks.

Defendant's response expressly did not address Counts IV, VI, or VII. However, Defendant contends that a genuine issue of material fact exists as to whether he willfully violated the Lanham Act by displaying Plaintiff's Marks. Defendant also (1) denies that he violated the Lanham Act and states that Plaintiff has failed to adequately show that it is entitled to damages under the Lanham Act; and (2) denies that he owes Plaintiff $41,588 and rejects the formula Plaintiff used to calculate damages in the amount of $41,588.

### 1. Whether Defendant Violated the Lanham Act

Plaintiff seeks summary judgment on Counts I, II, and III, alleging violations of the Lanham Act. Defendant denies that he violated the Lanham Act, but addresses only the issue of whether his conduct was willful.

To establish a *prima facie* case that Defendant violated Section 32 of the Lanham Act, Plaintiff must demonstrate that (1) the Marks were registered; (2) the Marks were used in commerce without Ramada's consent; and (3) Clemmons' unauthorized use of the marks created a likelihood of confusion, or mistake, or to deceive the public concerning the origin of the services

9

within the meaning of Section 32. *Dunkin' Donuts Inc. v. Donuts, Inc.*, No. 99-CV-1141, 2000 WL 1808517, at *4 (N.D. Ill. Dec. 6, 2000). To establish a violation of Section 43(a) of the Lanham Act, Plaintiff must show that: (1) Defendant made false statements about its product in advertisements; (2) the advertisements actually deceived or have a tendency to deceive a substantial segment of his audience; (3) the deception is material and is likely to influence the purchasing decision; (4) Defendant caused the falsely advertised goods to enter into interstate commerce; and (5) Plaintiff has been or is likely to be injured either by a diversion of sales or by a lessening of goodwill. *Borden, Inc. v. Kraft, Inc.*, No. 84 C 5295, 1984 WL 1458, at *12 (N.D. Ill. Sept. 28, 1984). To establish a claim under Section 43(c), Plaintiff must show that: (1) the senior mark is famous; (2) the junior mark is being used in commerce and for commercial purposes; (3) the use of the junior mark began after the senior mark became famous; and (4) the junior mark causes dilution of the senior mark. *Kraft Foods Holdings, Inc. v. Helm,* 205 F. Supp. 2d 942, 946 (N.D. Ill. 2002). A violation of Section 43(c) entitles owners of famous trademarks to an injunction against a third party who dilutes the famous mark. In order to obtain money damages for a violation of Section 43(c), a plaintiff must also show that the defendant acted willfully. (*See* 15 U.S.C. § 1125(c)(2).)

Defendant denies that he violated the Lanham Act. As noted above, the Court cannot rely upon conclusory statements such as this. "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Hadley*, 715 F.2d at 1243. Here, the Court finds that there is no genuine issue of material fact that Defendant violated Sections 32 and 43(a) of the Lanham Act and grants Plaintiff's motion for summary judgment on the issue of liability as to Counts I and II. Because Plaintiff is entitled to damages for Defendant's violations of Sections 32 and 43(a), the Court need not consider whether Plaintiff has established all the elements required to prove a violation of Section 43(c) (Count III).

The same analysis that applies to federal trademark infringement is used in assessing the merits of Plaintiff's claims under Counts VI and VII. *See Trans Union L.L.C. v. Credit Research, Inc.*, 142 F. Supp. 2d 1029, 1038 (N.D. Ill. 2001) (holding that the analysis used for federal trademark infringement claims is the same analysis used for unfair competition claims under the Lanham Act, Illinois common law trademark infringement and unfair competition claims, and claims under the Illinois Consumer Fraud and Deceptive Business Practices Act). As discussed above, the undisputed facts satisfy the elements of a claim for federal trademark infringement. Therefore, the Court grants Plaintiff's motion for summary judgment as to its trademark infringement claims in Counts I, II, IV, VI, and VII.

**2. Whether Defendant Acted Willfully When He Failed To Remove the Ramada Marks**

Defendant contends that an issue of fact exists as to whether Plaintiff has proven that his conduct constituted a willful violation of Section 43(c) of the Lanham Act (Count III) so that he would be liable for money damages. *See* 15 U.S.C. § 1125(c)(2) (to obtain money damages for a violation of Section 43(c), a plaintiff must show that the defendant acted willfully). To support his contention that Plaintiff is not entitled to summary judgment on this claim, Defendant relies on *Dynamic Model Products, Inc. v. Circus Hobbies, Inc.*, No. 89-2352, 1990 WL 265987, at *2 (C.D. Ill. April 11, 1990). However, that case addressed the question of willfulness for purposes of treble damages under Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

As the Court noted above, Plaintiff has established that Defendant violated Sections 32 and 43(a); therefore, it is entitled to the remedies set forth in Section 35 of the Lanham Act (15 U.S.C. § 1117). Establishing a willful violation of Section 43(c) would entitle Plaintiff to those same remedies. Accordingly, the Court need not consider willfulness in the context of the Section 43(c) claim alleged in Count III. Instead, our consideration of willfulness will be focused on the question of whether Plaintiff is entitled to enhanced damages under Section 35(a) of the

11

Lanham Act (15 U.S.C. § 1117(a)).

Section 35(a) provides that "[i]n assessing damages, the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount . . . . Such sum in either of the above circumstances shall constitute compensation and not a penalty." (15 U.S.C. §1117(a).) The Seventh Circuit has held that treble damages are justified when a defendant's trademark infringement is willful and deliberate. *See Dunkin' Donuts v. Towns Family, Inc.*, No. 95C3666, 1996 WL 328018, at *8 (N.D. Ill. June 11, 1996), citing *Gorenstein Enters. v. Quality Care-USA,* 874 F.2d 431, 435-36 (7th Cir. 1989); *see also Ramada Inns, Inc. v. Gadsden Motel Co.,* 804 F.2d 1562, 1568 (11th Cir. 1986) (awarding treble damages, attorney fees, and prelitigation interest where the franchisee illegally held over after its franchise was terminated). A finding of willfulness is appropriate when a defendant's conduct is knowing or deliberate. *See Sparks Tune-Up Ctrs., Inc. v. Strong,* No. 92 C 5902, 1995 WL 153277, at *4 (N.D. Ill. April 6, 1995), citing *Gorenstein*, 874 F.2d at 436 (defendant's conduct was deliberate where he was on notice of the wrongfulness of his conduct and failed to stop his infringing conduct); *see also Dunkin' Donuts v. Towns*, 1996 WL 328018, at *9-10 (defendants' continued display of trademarks after receiving termination letter and notice of lawsuit was willful and deliberate).

In *Dynamic Model Products*, the Central District court stated that "[w]hether the defendant acted willfully is a question of fact and thus not determinable in a motion for summary judgment." *Dynamic Model Products*, 1990 WL 265987, at *2. However, in this case, no factual issues exist regarding Defendant's conduct, therefore the Court may resolve the issue in the context of a summary judgment motion. *See e.g., Sparks*, 1995 WL 153277, at *4 (finding that the defendant's conduct was deliberate at the summary judgment stage); *Dist. Re/Max N. Cent.,*

*Inc. v. Cook*, 64 Fed. Appx. 562, 565, 2003 WL 1961822, at *3 (7th Cir. Wis.) ("If the circumstances warrant, it is solely within the district court's discretion to enhance damages under the Lanham Act.").

Here, it is undisputed that (1) Clemmons was personally bound by the Agreement, including his obligation to remove the Ramada Marks pursuant to Section 23 of the Agreement after Plaintiff terminated the Agreement in November 2002; (2) he received notice in August 2002 of Ramada's intent to terminate the Agreement; (3) he received Ramada's November 20, 2002, Notice of Termination; (4) he received Ramada's March 10, 2003, letter demanding that he cease using the Ramada Marks at the Facility; and (5) he did not remove the Ramada Marks until after July 2003, at least eight months after Plaintiff terminated the lease.

In response, Defendant says simply that the willfulness of his conduct is a disputed material fact. In his affidavit, Defendant declares that Quadrant leased the property in January 2002. (Clemmons affidavit, ¶ 3.) Notwithstanding the declarations in his affidavit, Defendant has not argued that he did not act willfully in failing to remove Ramada's Marks, and he provides no authority to support a contention that his sublease of the property in any way raises a question of fact regarding the purported willfulness of his conduct in failing to remove the trademarks once Ramada terminated the Agreement in November 2002. Plaintiff contends that the facts before the Court show that Clemmon's failure to remove the Marks was deliberate and willful. As Plaintiff points out, the QJV lease required Quadrant to comply with the terms set out in Clemmons' Agreement with Ramada (QJV lease, §§ 7.01, 7.06, 10.01) and authorized Clemmons to enter the premises to perform "any covenant or obligation of Tenant" (QJV lease, §§ 12.01, 12.02).

13

The undisputed facts show that Plaintiff terminated the Agreement with Defendant in November 2002, and that Defendant knew that he was obligated to remove the Marks from the facility at that time. Furthermore, it is undisputed that the Marks remained in place until about July 2003 and that Defendant knew that the Marks had not been removed from the facility. Finally, Defendant has presented no evidence that he was prevented from removing the Marks. As a result, the Court concludes that Defendant willfully failed to remove Ramada's Marks, therefore he is subject to enhanced damages under Section 1117 of the Lanham Act.

### 3. Damages for Trademark Infringement

Plaintiff seeks $41,588 in damages for the trademark infringement. James Darby's affidavit states as follows:

> These damages were calculated by determining the average monthly Recurring Fees due to RFS (based on the contractual percentage of gross room revenues for the Facility) accruing during the 24 months preceding termination, multiplied by the number of months of post-termination infringement (8 months). A true and correct copy of a schedule, created in the ordinary course of RFS' business, of the gross room revenues for the Facility in the 24 months preceding termination is attached hereto as Exhibit E.

Darby affidavit, ¶ 68. Plaintiff calculated damages using "a reasonable royalty measure of damages" based on average royalties for the twenty-four months preceding termination of the Agreement. (Reply in Support of Plaintiff's Motion for Summary Judgment, #33, p. 6-7.) Plaintiff's supplemental memorandum further explains how Mr. Darby arrived at the figure of $41,588.

Defendant challenges Plaintiff's claim that it sustained any damage and rejects the formula used to calculate the damages for infringement. However, Defendant did not respond to Plaintiff's supplemental memorandum and has failed to provide evidence showing that the amount tendered by Plaintiff is incorrect or to provide an alternative method for calculating

14

damages.

Reasonable royalties are a proper measure of damages for Lanham Act violations. *See Ramada Inns v. Gadsden Motel*, 804 F.2d at 1565 (royalties are a proper measure of damages for misuse of marks by a hold-over franchisee); *Ramada Franchise Systems, Inc. v. Boychuk*, 283 F. Supp. 2d 777, 790 (N.D.N.Y. 2003) (finding that recurring fees constitute an adequate and well-supported measure of damages for trademark infringement). Furthermore, courts have found it permissible to estimate the royalties. *Id.*, citing *American Farm Bureau Fed'n v. Alabama Farmers Fed'n*, 935 F. Supp. 1533, 1549 (M.D. Ala.1996). Absent any evidence or argument to the contrary, the Court accepts Plaintiff's figure of $41,588 for infringement damages.

As noted above, the undisputed facts show that Defendant acted willfully under the Act, therefore, he is subject to enhanced damages for violations of Sections 32 and 43(a) pursuant to Section 35(a). The Northern District court has stated that, in the licensing context, enhancement of damages for Lanham Act violations is especially appropriate because "without an enhancement, the infringer would be required to pay only what he should have paid to the aggrieved licensor in the first place." *Dunkin' Donuts v. Towns*, 1996 WL 328018, at *8, citing *Sands, Taylor & Wood v. Quaker Oats Co*, 34 F.3d 1340, 1351 (7th Cir. 1994) (finding that an enhancement of royalties under 15 U.S.C. § 1117(a) can be considered compensatory when the enhancement is based on deterrence or on an unjust enrichment theory).

Section 35(a) of the Lanham Act provides, in pertinent part, as follows:

> In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the

15

      circumstances of the case. Such sum in either of the above circumstances shall
      constitute compensation and not a penalty.

15 U.S.C. § 1117(a). Thus, the award of enhanced damages is subject to the Court's discretion. In this case, the evidence indicates that Defendant acted willfully in the sense that he knew that he had an obligation to remove the Marks, but he failed to do so. However, because he no longer had direct control of the facility, the Court concludes that his conduct does not merit treble damages. Based on the circumstances in this case, the Court grants Plaintiff's motion for enhanced damages but denies Plaintiff's request for treble damages. The Court concludes that infringement damages in the amount of $83,176 would be just. Based on Plaintiff's motion, these damages apparently cover all claims in Counts I-IV, VI, and VII.

### C. Whether Plaintiff Is Entitled to Damages for Both Trademark Infringement and Breach of Contract

      Defendant also states that Plaintiff has failed "to explain to the Court how it is entitled to damages under the Lanham Act and also contractual damages for liquidated damages." (#33, p. 3.) He provides no argument or authority to support his contention that he should not be liable for both measures of damages.

      Presumably, Defendant's objection was based on the idea that, because some of the trademark infringement damage award was predicated on the same items considered for liquidated damages, Plaintiff might receive a double recovery for a single injury. The Court notes that Plaintiff sought liquidated damages for the breach of contract claim. Thus, once Plaintiff proved the breach of contract, those damages were recoverable even in the absence of trademark infringement. The Eleventh Circuit Court of Appeals considered at length the question of whether an award of damages for both trademark infringement and breach of contract would constitute a double recovery. *See Ramada Inns v. Gadsden Motel,* 804 F.2d at 1566-67.

16

Without reiterating the discussion, this Court agrees with the decision in that case that a plaintiff may seek both remedies.

### D. Contract Claims

Plaintiff next argues that Plaintiff's evidence and undisputed facts show that Defendant breached the Agreement by failing to pay outstanding recurring fees, failing to satisfy the quality assurance inspections, failing to cure the quality assurance defaults, and failing to satisfy his insurance obligations under the terms of the Agreement.

In his response, Defendant does not dispute that he breached the Agreement. In his affidavit, Defendant declares that Quadrant leased the property in January 2002. (Clemmons affidavit, ¶ 3.) In his response to the motion for summary judgment, Defendant does not expressly argue that the QJV lease provides a defense to his liability for breach of contract nor does he refer to any case law to support such a proposition. Defendant has offered no facts to show that he did not breach the contract. As a result, the Court concludes that Defendant breached the Agreement and he owes Plaintiff damages for that breach.

#### 1. Liquidated Damages

Plaintiff seeks liquidated damages of $50,000 plus $14,250 interest for the breach of contract claim in Count IX. Liquidated damages provide an estimated damage amount for the period between November 2002 when Plaintiff terminated the Agreement and June 2007, the expiration date of the Agreement.

Defendant disputes Plaintiff's statement that the Agreement provides for interest on liquidated damages. Specifically, Defendant contends that the statement in Paragraph 6(c) of the

Agreement that provides that "[i]nterest shall accrue . . . from the due date of any payment due pursuant to this Agreement which remains unpaid beyond any applicable grace period" applies only to recurring fees. The Court disagrees. Although this statement is found under the section titled "Recurring Fees," the language clearly refers to "<u>any</u> payment due <u>pursuant</u> <u>to</u> <u>this</u> <u>Agreement</u>." (Agreement, ¶ 6(c) (emphasis added).) The Court construes this sentence as referring to all payments, not just recurring fees. Accordingly, the Court concludes that Plaintiff rightly determined that unpaid liquidated damages are subject to interest.

Defendant also contends that Plaintiff has provided no evidence that it sent Defendant an invoice for $50,000 in liquidated damages which would trigger the interest charge. Paragraph 6(c) of the Agreement provides the basis for Defendant's contention that an invoice is required to trigger the interest charge. It provides that "Interest shall accrue . . . from the due date of any payment due . . . and shall be payable immediately upon Licensee's receipt of Ramada's invoice." Plaintiff does not dispute this construction of Paragraph 6(c) or otherwise respond to this argument.

The Court cannot find any reference to an invoice for liquidated damages in Plaintiff's undisputed facts, Mr. Darby's affidavit, or Plaintiff's exhibits. The termination letter that Plaintiff sent to Defendant stated as follows: "You must also immediately pay us the full amount of all Recurring Fees and other charges due under the Agreement through the date you complete

the de-identification process. Additionally, you must pay us the amount of Liquidated Damages specified in the Agreement." (#30, Ex. 9.)

An invoice is generally understood to be an itemized statement of goods or services along

18

with the costs for those goods or services. *See* WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 642 (1990) (defining an invoice as "an itemized list of goods shipped or services rendered, with an account of all costs"); BLACK'S LAW DICTIONARY 827 (6th ed. 1990) (defining an invoice as a "written account, or itemized statement of merchandise shipped or sent to a purchaser, consignee, factor, etc., with the quantity, value or prices and charges annexed . . ."). Here, the letter at issue clearly constitutes a notice of termination, not an invoice for amounts due. As a result, the Court concludes that the letter does not constitute an "invoice" so as to trigger the accrual of interest pursuant to Paragraph 6(c) of the Agreement. Accordingly, the Court concludes that Plaintiff is not entitled to summary judgment on this issue.

### 2. Recurring Damages

Plaintiff seeks $86,348.03 in past due recurring fees for the breach of contract claim in Count XI. This amount includes recurring fees that Defendant apparently owed under the Agreement for the period prior to November 2002 when Plaintiff terminated the Agreement and accrued interest. Defendant objects to the monthly compounding of interest in calculating the amount of $86,348.03.

> Paragraph 6 of the Agreement is titled Recurring Fees. Paragraph 6(c) states as follows:
>
> Interest shall accrue at the rate of the lesser of 1.5% per month or the maximum rate permitted by applicable law from the due date of any payment due pursuant to this Agreement which remains unpaid beyond any applicable grace period and shall be payable immediately upon Licensee's receipt of Ramada's invoice.

Agreement, ¶ 6(c). This provision does not address compounding of interest. In its Reply, Plaintiff states that the damage amount includes only simple interest and Plaintiff's Exhibit D appears to confirm that. Absent any other argument regarding the amount of recurring fees, the Court grants Plaintiff's motion for an award of $86,348.03 in past due recurring fees.

### IV. Summary

For the reasons stated above, the Court **GRANTS** in part and **DENIES** in part Plaintiff's Motion for Summary Judgment **(#29)** as follows:

(1) The Court **GRANTS** Plaintiff's motion for summary judgment as to Defendant's liability for the trademark infringement claims in Counts I, II, IV, VI, and VII, and **DENIES** as moot Plaintiff's summary judgment motion on Count III. In addition, the Court finds that Defendant acted willfully when he continued to use Ramada's Marks after Plaintiff terminated the Agreement. As to the amount of damages for trademark infringement, the Court awards $83,176.

(2) Under Count IX, the Court **GRANTS** Plaintiff's motion for summary judgment on the issue of liability. Defendant is obligated to pay liquidated damages in the amount of $50,000. The Court **DENIES** Plaintiff's request for summary judgment on the issue of interest on liquidated damages.

(3) Under Count XI, the Court **GRANTS** Plaintiff's motion for summary judgment on the issue of liability for outstanding recurring fees in the amount of $86,348.03.

Plaintiff's motion for summary judgment did not expressly address Counts V and VIII. This case is scheduled for a telephone status conference on **January 5, 2005, at 2:00 p.m.** The Court will initiate the call.

Entry of judgment shall be deferred until all remaining claims have been resolved.

ENTER this 8th day of December, 2004.



                          s/ DAVID G. BERNTHAL
                          U.S. MAGISTRATE JUDGE

H:\Inbox\ORDER\2004\ramada v clemmons.03-2079.msj#29.order.wpd